IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CYNTHIA S. ABONO**,                                    Civil Case No. 09-6151-KI

                    Plaintiff,

   vs.                                    OPINION AND ORDER

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                    Defendant.


      Kathryn Tassinari
      Mark Manning
      Harder, Wells, Baron & Manning, P.C.
      474 Willamette, Suite 200
      Eugene, Oregon  97401

            Attorneys for Plaintiff

      Dwight C. Holton
      Acting United States Attorney
      District of Oregon


PAGE 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Stephanie R. Martz
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Cynthia Abono brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner partially denying plaintiff's application for supplemental security income benefits

("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for SSI on October 22, 2002.  The application was denied

initially and upon reconsideration.  After a timely request for a hearing, plaintiff, represented by

counsel, appeared and testified before an Administrative Law Judge ("ALJ") on July 7, 2005.

On October 21, 2005, the ALJ issued a partially favorable decision finding that plaintiff

was disabled as of July 30, 2004, when she turned 50 and became a person "closely approaching

advanced age."  Tr. 652.  The Appeals Council reviewed and remanded the case on June 1, 2007,

finding a contradiction between plaintiff's "sedentary" residual functional capacity ("RFC") and

the "light" work that the ALJ found someone with plaintiff's RFC could perform.

Upon remand, the ALJ held a supplemental hearing.  The ALJ issued a decision on

PAGE 2 - OPINION AND ORDER

December 21, 2007, finding plaintiff disabled as of March 13, 2003, the day on which plaintiff

was involved in a car accident. This decision became the final decision of the Commissioner

when the Appeals Council declined to review the decision of the ALJ on April 2, 2009.

Plaintiff challenges the supplemental decision, claiming she demonstrated disability as of

at least her filing date of October 22, 2002.[1]

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

_____

[1]Plaintiff has also filed an application for DIB, which is not yet fully adjudicated,
claiming disability beginning November 22, 2000. Her date last insured is December 31, 2001.

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the

Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

In his supplemental decision, the ALJ concluded plaintiff became disabled on March 13, 2003.  The ALJ found plaintiff had the "severe" impairments of osteoarthritis of the right hip, degenerative disc disease of the lumbar spine, obesity, diabetes mellitus with peripheral neuropathy and ataxia, history of mitral valve prolapse, history of episodes of paroxysmal atrial fibrillation status post cardioversion, anxiety disorder not otherwise specified, with panic features, major depression, rule out pain disorder, history of mild post-concussion syndrome following a motor vehicle accident on March 13, 2003, with disequilibrium, including episodic imbalance and occasional falls, history of migraine headaches, and history of right shoulder impingement.  The ALJ opined that plaintiff's sleep apnea and migraine headaches imposed only a minimal limitation on her ability to function and he treated them as "nonsevere" impairments.

PAGE 5 - OPINION AND ORDER

The ALJ found that plaintiff's depression and anxiety met the requirements of sections 12.04 and 12.06 of Appendix 1, Subpart P of part 404 of the Social Security Regulations beginning March 13, 2003.

The ALJ concluded that before March 13, 2003, plaintiff had the RFC to occasionally lift and carry up to 10 pounds, frequently lift less than 10 pounds, and stand or walk for at least two hours in an eight-hour day. She could occasionally crouch and climb ramps, stairs, ladders, and scaffolds. She should have avoided hazards since she needed a cane to walk. She could not work in crowds or large groups and could not provide ongoing service to the general public. She would have experienced difficulty with rapid, unanticipated changes in her work environment.

Based on this RFC, plaintiff could not perform her past relevant work prior to March 13, 2003, but could work as a computer controlled printer operator or semiconductor assembler.

**FACTS**

Plaintiff, born on July 30, 1954, alleges disability beginning November 22, 2000, due to atrial fibrillation, heart damage, depression, migraine headaches, anemia, sleep apnea, panic attacks, diabetes, fatigue, anxiety, medication side effects, chronic neck pain, use of a cane, memory problems, falls, and restless leg syndrome. Plaintiff has a high school education. She has worked as a manager at a daycare center, as a bakery worker, and as a loan clerk.

I record here only the facts from plaintiff's medical history that are relevant to the arguments she makes in challenging the ALJ's opinion. Between the date of her application of October 22, 2002, and the date the ALJ found plaintiff disabled of March 13, 2003, plaintiff sought Demerol injections for her migraines on three occasions: December 2002 (Tr. 355), January 2003 (Tr. 351) and March 2003 (Tr. 209-210). She also received a Demerol injection on

October 5, 2002, a few weeks before she filed her application (Tr. 359). She reported having a

migraine when she went to the doctor for chest pain in November 2002.

Plaintiff's physician, Brian Jones, M.D., treated plaintiff for depression, migraine

headaches, and atrial fibrillation, among other more run-of-the-mill illnesses, beginning in

November 2000. In December 2001, Dr. Jones gave plaintiff a Demerol shot for her migraine

headache and talked with her about the stress she was under due to her decision to separate from

her husband. She was getting counseling. Dr. Jones opined that plaintiff was "not in any

situation to be working at this time and is to continue to be off work through the end of

December." Tr. 383.

Dr. Jones continued to treat plaintiff through 2002. In April, May and July of 2002, Dr.

Jones treated plaintiff with medications for her depression and panic attacks. In September of

2002, plaintiff again complained of panic attacks.

Plaintiff was evaluated by Pamela Joffe, Ph.D., in October of 2002. Plaintiff reported

that she intended to begin treatment with a counselor for her anxiety. Dr. Joffe opined that

plaintiff "may have difficulty trusting a therapist" given plaintiff's domestic violence history. Tr.

200. Nevertheless, Dr. Joffe described plaintiff as "motivated for treatment." Id.

In November 2002, plaintiff reported to Dr. Jones that she was experiencing panic attacks

on shopping trips and that it had taken her two hours to find a close parking spot at the grocery

store the day before. She asked for a disability parking pass so she could park close to the store

to make "a good getaway." Tr. 356. Dr. Jones obliged. In January of 2003, plaintiff reported

that she had attended counseling, but had not been lately. She described her life as stressful,

what with taking care of her daughter and her grandchildren. Dr. Jones noted plaintiff had access

to counseling but had not gone; he recommended regular counseling.  By February, plaintiff was feeling better with an increase in her Prozac prescription.

In March of 2003, plaintiff was in a terrible car accident.  When plaintiff was on her way to drop her son off at school, a car lost control and hit the driver's side of plaintiff's car.  The speeding car careened up on the sidewalk and struck and killed a high school student.  Plaintiff thereafter reported increased anxiety and depression.

Dr. Jones again recommended counseling in April 2003.

Dr. Jones offered his opinion on November 7, 2003 that plaintiff was disabled due to chronic depression and panic disorder.  Dr. Jones reported that plaintiff had trouble leaving home, fell repeatedly, that her therapist told her to walk with a cane, that she suffered from chronic pain which could be fibromyalgia, and that she had frequent migraine headaches.  He noted she could do some laundry and could vacuum, but did not cook often.  She drove her son to school, visited her mother, and went to church weekly.  He believed she could do a sedentary job at home.  He also noted that plaintiff drank Coke every day and advised her to switch to Diet Coke.

**DISCUSSION**

Plaintiff challenges the ALJ's conclusions regarding her testimony, the severity of her migraines, her daughter's third-party report, Dr. Jones's opinions of disability, and her RFC.

I.    <u>Plaintiff's Credibility</u>

Plaintiff testified that she stopped working in November of 2000 because she could no longer work as a daycare provider due to low back pain and poor memory.  She testified that she had suffered from migraines.  She testified that she did not take special medication for her

headaches; she took Ibuprofen and "see[s] if it will go away and then the next day if I still have it

then I go in and I have to get a shot of Demerol."  Tr. 906.  She testified she got these headaches

"that [she] cannot recover from and have to go get a shot" every two and a half to three months,

but that she had begun to experience them every six months more recently.  Tr. 906.  When her

attorney asked her whether she got headaches in between her visits to urgent care, she testified

she experienced migraines two other times a month and that she treated them by closing the

blinds and sleeping for two to 12 hours.  Additionally, she testified that she was depressed and

experienced panic attacks, had trouble with her right hip off and on, and fell down the stairs

often.

      The ALJ found plaintiff's testimony not entirely credible.  Although plaintiff claimed she

stopped working in 2000,[2] medical records from March 2002 and March 2003 reflected her

reports that she was working.  The ALJ also noted plaintiff's reports in November and December

of 2001 that she was self-employed with child care.  Additionally, the ALJ repeatedly referenced

negative and mild test results, despite plaintiff's emergency room visits, and that plaintiff

continued to work during times when she was seeking treatment for various infirmities such as

her depression, obesity, diabetes, atrial fibrillation, and dizziness.  The ALJ pointed out that

plaintiff's doctor recommended exercise, indicating he thought she was capable of it, that her

doctor strongly recommended weight loss, that plaintiff had the ability to take vacations, and that

she exaggerated her weight when she reported she had gained 20 pounds.  The ALJ also noted

plaintiff had been told on several occasions to stop drinking soda.

---

      [2]The ALJ's opinion incorrectly reflects the date when plaintiff stopped working as
November 2001 (Tr. 640) when in fact plaintiff testified she stopped working in November 2000
(Tr. 894).

After her motor vehicle accident in March 2003, plaintiff started physical therapy. Despite reporting that she felt better after therapy, she failed to attend regularly and was eventually discharged for no-shows. Her physical therapist reported that she could walk, lift, carry and engage in athletic activities.

In January 2003, she reported to Dr. Jones that she felt stressed as she was caring for her children and grandchildren, but she reported she had not gone to her counselor even though she had one. Dr. Jones recommended counseling. The ALJ commented that the fact that plaintiff had access to counseling, but had not gone, was "inconsistent with her claim of disability." Tr. 646. In April, 2003, Dr. Jones recommended again that plaintiff attend counseling. The fact that plaintiff "had not followed up on recommendations to get available counseling as of" April 2003 undermined her credibility, according to the ALJ.

That same month, in a psychological evaluation, plaintiff reported she shopped by herself about twice a week, and she participated in church and in her son's school activities. By her self-report, she scrap-booked, painted, sewed, and decorated cakes (with breaks). She taught Sunday school with help. The ALJ opined that plaintiff's "subjective claims are not entirely consistent because she stated she could go to church weekly and could attend functions like her son's banquet (albeit with difficulty) but also stated she had difficulty leaving her home." Tr. 644.

The ALJ concluded that he "considered the claimant's allegations and has found them generally credible only as far as they are consistent with the determined RFC. . . . The undersigned gives her statements some weight but notes that the evidence does not support her claims of total disability. She has some limits as described in her RFC and her statements are credible to the extent they are consistent with those limits." Tr. 648.

PAGE 10 - OPINION AND ORDER

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

Plaintiff contends that the ALJ failed to give clear and convincing reasons for finding her testimony about her limitations not entirely credible. Plaintiff argues that her report in March 2002 that she had a daycare business was prior to her application for benefits, and her report in March 2003 that she worked as an elementary school administrator was inaccurate since nothing else in the record supported her holding such a position. Despite plaintiff's arguments, the point is that she was working past the time when she claimed to be physically and mentally incapable of work and that her testimony was inconsistent with the record.[3] These are valid reasons to find plaintiff's testimony not entirely credible. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (inconsistent statements relevant to credibility); Smolen v. Chater, 80 F.3d 1273, 1284

_____

[3] I note repeated references in the record to plaintiff's need for Dr. Jones to write an excuse from work. Tr. 378 (1/23/02); Tr. 371 (5/1/02); Tr. 368 (5/30/02); Tr. 364 (7/22/02); and Tr. 363 (8/8/02). Additionally, as the ALJ noted, medical records reflect plaintiff reported she was working in November and December 2001, a year after she testified that she stopped working.

(9th Cir. 1996) (ALJ may consider work record).

Plaintiff also takes issue with the ALJ's finding that she failed to obtain counseling as recommended by her doctor. Dr. Jones first recommended counseling in January 2003, but he also increased her Prozac dosage so she felt better by February. According to plaintiff, the traffic accident occurred in March and she began going to counseling again. As the ALJ noted, however, plaintiff did not follow up with counseling until Dr. Jones *again* recommended that she receive counseling in April 2003. Tr. 646. Plaintiff's failure to follow her doctor's recommendation is a valid reason to question her credibility if plaintiff offers no explanation. Smolen, 80 F.3d at 1284 (unexplained failure to follow prescribed course of treatment is factor to consider in credibility analysis); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (unexplained failure to follow doctor advice is credibility factor).

Additionally, the ALJ also found plaintiff not credible because she had earlier "access to counseling but had not gone." As he noted, this was "inconsistent with her claim of disability and negatively affect[s] her credibility." Tr. 646; see Parra, 481 F.3d at 750-51 ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").[4]

Plaintiff suggests the ALJ improperly considered all of the negative and mild test results as undermining her credibility. She points to her panic attacks, confirmed by Dr. Joffe's testing, the X-rays showing osteoarthritis in her hip, and her migraine headaches, which are not subject to verification. The record reflects, however, that the ALJ rejected Dr. Joffe's GAF score as being

---

[4]Indeed, as the Commissioner argues, the fact that plaintiff could attend counseling when her symptoms worsened in March 2003 is further support for the notion that her symptoms were not as severe prior to that time.

"inappropriately low given claimant's wide range of activities," a conclusion plaintiff does not

challenge. Tr. 646. The ALJ described N. Paul Hudson, M.D.'s evaluation of plaintiff's right

hip pain as reflecting "mild findings," a conclusion plaintiff does not challenge. Tr. 643. The

ALJ provided a clear and convincing reason for finding plaintiff not as limited as she reported.

See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (although the ALJ cannot reject

subjective pain testimony solely because it was not fully corroborated by objective medical

evidence, medical evidence is still a relevant factor in determining the severity of the pain and its

disabling effects).

      The Commissioner argues the ALJ rejected plaintiff's testimony based on the number of

activities in which she participated, an argument which plaintiff disputes. It is true that the ALJ

did not explicitly rely on plaintiff's activities to find her testimony unreliable. Nevertheless, the

ALJ did point out plaintiff's contradictory reports about her abilities; she went to church weekly

and to events like her son's football banquet, but yet inconsistently reported difficulty leaving the

home. She also left the house to go on vacation. Accordingly, the ALJ gave a clear and

convincing reason to find plaintiff's testimony about her limitations not entirely credible. Id. at

857 ("totally disabling pain was undermined by [plaintiff's] own testimony about her daily

activities").

      Plaintiff does not challenge the other reasons the ALJ gave for finding plaintiff's

testimony about her limitations not fully credible. Plaintiff exaggerated her weight gain and

plaintiff's doctor recommended on a number of occasions that she start drinking Diet Coke

instead of regular Coke. Smolen, 80 F.3d at 1284; Fair, 885 F.2d at 604.

      Finally, as for her ability to exercise, according to plaintiff, that is not indicative of an

ability to work through the pain.  Her failure to attend physical therapy occurred after the date the

ALJ found her disabled, and plaintiff argues she was suffering from depression and panic

disorder determined by the ALJ to be at listing level, which precluded her from leaving home.  I

agree with plaintiff.  Nevertheless, the fact that the ALJ improperly considered some reasons for

finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility

assessment is improper.  Batson, 359 F.3d at 1197.

On the whole, the ALJ provided a plethora of clear and convincing reasons for finding

plaintiff not nearly as limited as she testified.

II.    Migraines as Severe Impairment

The ALJ inconsistently considered plaintiff's history of migraine headaches as one among

many "severe" impairments when he also stated that plaintiff's history of migraine headaches

was not "severe."   He opined that plaintiff's migraines were a condition that has been "treated

and do[es] not impose more than a minimal limitation upon the claimant's ability to function."

Tr. 21.

The threshold at step two is a low one.  It is a "de minimis screening device [used] to

dispose of groundless claims."  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (internal

quotation omitted).

> A claim may be denied at step two only if the evidence shows that the individual's
> impairments, when considered in combination, are not medically severe, i.e., do
> not have more than a minimal effect on the person's physical or mental ability(ies)
> to perform basic work activities.  If such a finding is not clearly established by
> medical evidence, however, adjudication must continue through the sequential
> evaluation process.

Social Security Ruling 85-28.

PAGE 14 - OPINION AND ORDER

Because of his inconsistent statements, it is unclear whether the ALJ considered plaintiff's migraine headaches to be a severe impairment or not. Nevertheless, because the ALJ proceeded beyond step two in the sequential analysis, the court will consider the effect of the ALJ's alleged error in reviewing the subsequent findings at steps four and five. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis).

Plaintiff claims her migraines limited her ability to work. She testified somewhat inconsistently that she got the headaches every two and a half to three months and that she would try treating them with Ibuprofen before seeking a shot of Demerol, but then testified that she gets an additional two headaches a month that she does not treat with a Demerol injection. For the latter headaches, she testified that she needed to lie down and sleep from two to twelve hours. She received Demerol injections in early October 2002, just before she filed her application, in December 2002, January 2003 and March 2003.

Even if the ALJ erred in considering plaintiff's migraines nonsevere, as I noted above, one of the reasons the ALJ found plaintiff not fully credible was that she reported she was working in November and December 2001, as well as in March 2002 and March 2003, when she testified that she stopped working in November 2000. She continued to work despite her migraines.[5] Any error the ALJ made in considering plaintiff's migraines nonsevere was harmless as her condition imposed no credible limitations on her ability to function.

---

[5]Indeed, plaintiff informed Dr. Jones that she had been able to manage her migraines with medications. Tr. 359.

PAGE 15 - OPINION AND ORDER

III.    Lay Witness

Plaintiff's daughter reported that she saw her mother every day.  Plaintiff talked or socialized with people on a daily basis; she was "sometimes real depressive" (Tr. 80); her grandchildren visited her; she left the house to go to church, go to church functions, pick her son up, and drive her son to friends' houses; she was very social with friends; she visited relatives; she often had "short term memory loss" (Tr. 82); her walking was "limited because of breathing" and she "needs to take frequent breaks" (Tr. 83); she did some arts and crafts project every day; she cooked meals, did laundry, vacuumed every other day, dusted and took out the trash; she read, watched television and cared for her pet; she could not stand or walk for long periods of time.  Plaintiff's daughter described plaintiff as previously successfully handling her demanding job managing a daycare, whereas now she "gets tired, has migraines, [gets] depressed, has diabetes, and bad panic attacks."  Tr. 90.

The ALJ gave plaintiff's daughter's statement "some weight."  Tr. 648.  The ALJ further stated he relied on plaintiff's daughter's statement only to the extent it was consistent with the RFC.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  A medical diagnosis, however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The Commissioner argues that plaintiff fails to identify which impairment identified by her daughter is not reflected in the RFC.  Plaintiff does not produce any evidence of memory

PAGE 16 - OPINION AND ORDER

problems, the RFC adequately reflected plaintiff's limitations in standing and walking for only two hours out of an eight-hour day, and that plaintiff could not work in large groups or provide ongoing service to the general public.

Plaintiff contends that the ALJ's RFC does not account for her inability to leave the house, arguing that the restriction of avoiding the general public is insufficient. Additionally, she suggests the RFC does not account for her need to take frequent breaks or her inability to stand or walk for long periods of time.

I disagree with plaintiff. The ALJ's RFC accounts for the limitations identified by plaintiff's daughter. The ALJ found plaintiff's activities reflected her ability to leave the house and he found the medical evidence reflected her ability to stand and walk for two hours in an eight-hour day. These are germane reasons supported by substantial evidence in the record to reject plaintiff's daughter's statements to the extent they are inconsistent with the RFC. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (rejected lay witness testimony because the ALJ found claimant's testimony about his activities undermined his credibility); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ may reject a lay witness' testimony if it conflicts with medical evidence).

IV.    Medical Opinion

Dr. Jones opined in December 2001 that plaintiff was not in any situation to be working and was to be off work through December. Plaintiff contends Dr. Jones's finding indicates that a year before her application for disability, plaintiff was suffering from functional limitations, even if just for a short time, and that the record shows plaintiff's health continued to decline.

I agree with the Commissioner that the ALJ did not err in failing to consider Dr. Jones's

December 2001 opinion.  It predated the beginning of the relevant period by almost a year, was limited by its terms to one month, and reflected plaintiff's condition at a particularly difficult time when she was considering separating from her husband.

Plaintiff initially relied on Dr. Jones's opinion of disability dated November 7, 2003, arguing that the ALJ failed to give clear and convincing reasons for rejecting it.  The Commissioner responded that the ALJ found plaintiff disabled beginning March 13, 2003, so any error the ALJ made in rejecting the opinion is harmless.  Plaintiff offers no rebuttal.  I agree with the Commissioner.

Finally, plaintiff challenges the ALJ's rejection, as evidence of disability, of Dr. Jones's November 2002 completion of a form for plaintiff to obtain a disabled parking permit.  The ALJ observed that Dr. Jones did not give any explanation for finding plaintiff disabled in his treatment notes.  Plaintiff disputes the ALJ's reasoning, arguing that Dr. Jones reported plaintiff's need to "get a good getaway" due to her panic disorder when shopping.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285.  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial

evidence to reject the opinion of a treating or examining physician.  Id. at 831.  Opinions of a

nonexamining, testifying medical advisor may serve as substantial evidence when they are

supported by and are consistent with other evidence in the record.  Morgan v. Comm'r of Soc.

Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

Dr. Jones's opinion is contradicted by Disability Determination Service consulting

psychologists Karen Bates-Smith, Ph.D., and Bill Hennings, Ph.D.  Both concluded plaintiff is

unable to work with the public, but is not limited in any other ways.  As a result, the ALJ needed

only to identify specific and legitimate reasons for rejecting Dr. Jones's opinion, as opposed to

clear and convincing reasons.

Dr. Jones did not express any reasons for finding plaintiff disabled.  He simply relied on

plaintiff's report that she felt she needed a quick getaway.  A physician's opinion of disability

"premised to a large extent upon the claimant's own accounts of his symptoms and limitations

may be disregarded where those complaints have been properly discounted."  Morgan v. Comm'r

of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation omitted); Tonapetyan

v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Furthermore, an ALJ is not required to accept the

opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and

inadequately supported by clinical findings."  Batson, 359 F.3d at 1195.

Accordingly, the ALJ did not err in his decision to reject, as evidence of plaintiff's

inability to work, Dr. Jones's November 2002 agreement to complete a disability form.

V.    Residual Functional Capacity

Plaintiff complains that the hypothetical contained no limitations related to her migraine

headaches, and did not include the limitations identified by Dr. Jones, plaintiff's daughter, and

PAGE 19 - OPINION AND ORDER

plaintiff's own testimony.  She argues that stress, anxiety and depression would prevent any

work, and her headaches would keep her away from work at least two days a month.

     Hypothetical questions posed to a vocational expert must specify all of the limitations and

restrictions of the claimant.  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the

hypothetical does not contain all of the claimant's limitations, the expert's testimony has no

evidentiary value to support a finding that the claimant can perform jobs in the national economy.

<u>Id.</u>

     For the reasons set forth above, the RFC contained all of plaintiff's limitations that were

supported by the record.  Accordingly, the ALJ did not err in finding plaintiff not disabled prior

to March 13, 2003.

## CONCLUSION

     The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

     Dated this ___15th_____ day of June, 2010.

          /s/ Garr M. King_____

          Garr M. King
          United States District Judge